# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| STEPHEN BRANCH | : | CIVIL ACTION |
| Plaintiff, | : | No.: 20-2323 |
| v. | : | |
| TEMPLE UNIVERSITY., ET AL. | : | |
| Defendants. | : | |

### PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO PRECLUDE EXPERT TESTIMONY

Stephen Branch ("Mr. Branch" or "Plaintiff") provides this Court with the following Memorandum of Law in Opposition to Defendants' Motion to Preclude the Expert Testimony of Chad Staller. Plaintiff relies upon the following Memorandum of Law and Plaintiff's Expert Report, which warrant denial of Defendants' motion in its entirety.

Respectfully submitted,

**KARPF, KARPF & CERUTTI, P.C.**

By: /s/ David N. Korsen
David N. Korsen, Esq.
3331 Street Road
Two Greenwood Square, Suite 128
Bensalem, PA 19020
(215) 639-0801

Dated: June 7, 2021

I.       **INTRODUCTION/FACTUAL BACKGROUND**

Stephen Branch ("Mr. Branch") brought this action against his former employer of over fifteen years Defendant Temple University, his former supervisor Defendant Sean Ounan, and Defendant Temple's head of Human Resources Defendant Sharon Boyle, due to Race Discrimination and Retaliation in violation of 42 U.S.C. § 1981 and Title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e, et. seq.), and claims of Interference and Retaliation in violation of the Family and Medical Leave Act ("FMLA" - 29 U.S.C. §2601 et seq.).

As set forth *herein,* Defendants' motion to preclude expert testimony fails to make any legally or factually sufficient argument in accordance with Third Circuit precedent which would result in preclusion of Expert Staller's testimony or his report. Truly, instead of either deposing Expert Staller at any point during the discovery period or even alleging within their motion that his methods are based upon his own subjective belief or unsupported speculation as required by the Third Circuit, Defendants are simply asking that this Honorable Court pick their rebuttal expert report's conclusions (entirely within the section titled "Discussions of Areas of Disputes") over Plaintiff's without hearing or reviewing *any expert testimony* beforehand (because Defendants failed to obtain such testimony in the first place.) Likewise, Defendants do not claim that the report would not be helpful to any jury in this matter or that the report is scientifically inaccurate. Again, Defendants simply ask that this Court pick their own self-serving report and interpretations over Expert Staller's. That would be impermissible under Third Circuit precedent given that "Courts have adopted a "liberal policy of admissibility" with respect to Rule 702." *In re Niaspan Antitrust Litig.,* 464 F. Supp. 3d 678, 692 (E.D. Pa. 2020)(citing *Pineda v. Ford Motor Co.*, 520 F.3d 237, 243 (3d Cir. 2008). Therefore, Defendants' Motion must be denied in its entirety. The "rejection of expert testimony is the exception and not the rule." *Niaspan*, 464 F. Supp. 3d at 692 (E.D. Pa. 2020)(citing *Dorman Prods. v. PACCAR, Inc.*, 201 F. Supp. 3d 663, 686 (E.D. Pa 2016).

## II. LEGAL ANALYSIS

### A. The F.R.E 702 and *Daubert* Admissibility Standard

Admissibility of expert testimony or evidence is guided by Federal Rule of Evidence 702, which requires "the trial judge to act as a 'gatekeeper' to ensure that any and all expert testimony or evidence is not only relevant, but also reliable." *Kannankeril v. Terminix Int'l*, 128 F.3d 802, 806 (3d Cir. 1997)(citing *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589, 125 L. Ed. 2d 469, 113 S. Ct. 2786. (1993). Federal Rule of Evidence 702 requires expert testimony or evidence to meet the following:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

F.R.E. 702. "The Rules of Evidence embody a strong and undeniable preference for admitting any evidence which has the potential for assisting the trier of fact." *Kannankeril*, 128 F.3d at 806 (3d Cir. 1997)(citing *Holbrook v. Lykes Bros. S.S. Co*., 80 F.3d 777, 780 (3d Cir. 1996). "**Rule 702, which governs the admissibility of expert testimony, has a liberal policy of admissibility**." *Ibid.* (internal citations omitted)(emphasis added). Admissibility decisions focus <u>on the expert's methods and reasoning</u>; credibility decisions arise after admissibility has been determined. *Kannankeril*, 128 F.3d at 806 (3d Cir. 1997)(citing *In re Paoli R.R. Yard Pcb Litig.*, 35 F.3d 717, 743-746 (3d Cir. 1994)). "In order for the expert testimony to be "reliable," we have required that the testimony be based on the "methods and procedures of science," rather than on "subjective belief or unsupported speculation."" *Kannankeril*, 128 F.3d at 806 (3d Cir. 1997)(citing *Paoli*, 35 F.3d at 744 (3d Cir. 1994)). Factors to be reviewed when determining admissibility are:

> (1) whether a method consists of a testable hypothesis; (2) whether the method has been subject to peer review; (3) the known or

2

> potential rate of error; (4) the existence and maintenance of standards controlling the technique's operation; (5) whether the method is generally accepted; (6) the relationship of the technique to methods which have been established to be reliable; (7) the qualifications of the expert witness testifying based on the methodology; and (8) the non-judicial uses to which the method has been put.

*Paoli*, 35 F.3d at 742 n.8 (3d Cir. 1994).

Instructive, "[t]he Federal Rules of Evidence are meant to instruct the district courts in the sound exercise of their discretion in making admissibility determinations **and should not be interpreted as exclusionary rules**." *Holbrook*, 80 F.3d 777, 782 (3d Cir. 1996)(emphasis added). "If the expert has "good grounds" for the testimony, the scientific evidence is deemed sufficiently reliable. A determination that the expert has good grounds assures that the expert's opinions are based on science rather than "subjective belief or unsupported speculation."" *Holbrook*, 80 F.3d 777, 78 (3d Cir. 1996) (citing *Daubert*, 113 S. Ct. at 2795.) "A judge frequently should find an expert's methodology helpful even when the judge thinks that the expert's technique has flaws sufficient to render the conclusions inaccurate." *Paoli*, 35 F.3d at 744-45 (3d Cir. 1994). "He or she will often still believe that hearing the expert's testimony and assessing its flaws was an important part of assessing what conclusion was correct and may certainly still believe that a jury attempting to reach an accurate result should consider the evidence." *Ibid. See also Paoli*, 35 F.3d at 747 (3d Cir. 1994):

> Under our case law on Rule 703, "the proper inquiry is not what the court deems reliable, **but what experts in the relevant discipline deem it to be."** *In re Japanese Elec. Prod.*, 723 F.2d at 277. *See also De Luca*, 911 F.2d at 952; *Paoli I*, 916 F.2d at 853. We have held that the district judge must make a factual finding as to **what data experts find reliable**, *see id.* at 853, and that if an expert avers that his testimony is based on a type of data on which experts reasonably rely, that is generally enough to survive the Rule 703 inquiry. *See De Luca*, 911 F.2d at 952. (emphasis added).

3

As the Third Circuit has held, **"[t}he evidentiary requirement of reliability is lower than the merits standard of correctness**. *Paoli,* 35 F.3d at 744 (3d Cir. 1994)(emphasis added). "*Daubert* states that a judge should find an expert opinion reliable under Rule 702 if it is based on "**good grounds**," i.e., if it is based on the methods and procedures of science. A judge will often think that an expert has good grounds to hold the opinion that he or she does *even though the judge thinks that the opinion is incorrect*. Ibid. (emphasis added). "As Daubert indicates, "the focus . . . must be solely on principles and methodology, not on the conclusions that they generate." *Ibid.*

### B. Expert Staller's Analysis Is Based On Reliable Methods And Procedures Of Science

Courts must address a "trilogy of restrictions" before permitting the admission of expert testimony: qualification, reliability and fit. *In re Niaspan Antitrust Litig.*, 464 F. Supp. 3d 678, 692 (E.D. Pa. 2020)(citing *Schneider v. Fried*, 320 F.3d 396, 404 (3d Cir. 2003); *Elcock v. Kmart Corp.*, 233 F.3d 734, 741 (3d Cir. 2000). The party offering the expert must establish each requirement by a preponderance of the evidence. *Id. (citing In re TMI Litig.*, 193 F.3d 613, 663 (3d Cir. 1999). Here, Defendants do not challenge any of Expert Staller's "scientific, technical, or other specialized knowledge" that "will help the trier of fact to understand the evidence or to determine a fact in issue." Likewise, Defendants do not challenge Expert Staller's qualifications. Instead, Defendants seem to challenge only minor, particular pieces of Expert Staller's conclusions (i.e. the reliability prong) that contradict their defenses and self-serving arguments. In doing so, Defendants largely cite to factual disputes offered by their own rebuttal expert witness report instead of offering any real legal disqualifying reason why Expert Staller should be precluded from introducing expert testimony and opinion. In fact, Defendants presumably agree, or at least do not take any issue, with the majority of the report. Thus, even if this Honorable Court finds any of

Expert Staller's conclusions not reliable under F.R.E. 702 (which they are not), such findings then do not preclude the remainder of the report which Defendants have accepted as admissible.

Furthermore, Defendants do not claim that Expert Staller's report is based upon any "subjective belief or unsupported speculation" as would be required in the Third Circuit. This Honorable Court should deny Defendants' motion on this basis alone. "The reliability requirement of *Daubert* "means that the expert's opinion must be based on the 'methods and procedures of science' rather than on 'subjective belief or unsupported speculation'; the expert must have 'good grounds' for his or her belief."" *In re Niaspan Antitrust Litig.*, 464 F. Supp. 3d 678, 692 (E.D. Pa. 2020)(citing *Paoli*, 35 F.3d at 742 (3d Cir. 1994)). Important to note though, again, Defendants made the decision not to depose and cross-examine Expert Staller, which is the appropriate and proper method of challenging a witness, not simply relying upon a self-serving rebuttal report to try to exclude same in later motion practice. Notwithstanding, Plaintiff addresses Defendants' individual arguments below, which warrant denial of Defendants' motion in its entirety.

1. ***Expert Staller's Tuition Remission Analysis Is Based On Reliable Methods And Fact***

First, Defendants do not allege that Expert Staller's tuition remission analysis is based on Staller's own subjective belief or any unsupported speculation as required under Third Circuit precedent. Instead, Defendants just take issue with a jury question of fact as to whether Mr. Branch's children would be "immediately eligible for tuition remission." Simply because Defendants disagree with Expert Staller's conclusions, that does not make it subject to preclusion. Indeed, Expert Staller's report relies entirely upon scientific and factual information, and not Expert Staller's own belief or speculation.

Notwithstanding, Defendants argue that their self-serving interpretation of another university's tuition remission policy without any additional information alone serves as a means to preclude Expert Staller's entire report. This is legally wrong. Questions of fact which

5

Defendants are proposing, i.e. whether Mr. Branch would be eligibly or not for "immediate" tuition remission in claiming that Expert Staller's "characterization of the SJU policy is wrong," is entirely a jury question at which time Expert Staller's characterization can be challenged by Defendants on cross-examination, and is not appropriate solely within a legal brief where Expert Staller's good grounds cannot be explained by the expert himself. All the same, Defendants have not presented any factual evidence beyond their own self-serving characterization of SJU's policy in rebuttal (of course claiming that Mr. Branch would be eligible immediately), which is not a sufficient basis for objection or an allegation that Expert Staller's analysis is based upon his own "subjective belief or unsupported assumption." The analysis is supported by Expert Staller's interpretation of a written policy. Any issues Defendants take with an interpretation are not grounds for preclusion.

Moreover, Defendants ask this Court to throw out Expert Staller's report because they, without any of their own facts in support, assume that Plaintiff's children could never have been accepted to Temple and were never going to apply. Not only is such an assumption personally insulting to Plaintiff and his children, but Defendants' argument is wrong.[1] The expert report does not assume that Plaintiff's children will apply and will be accepted to Temple "*after* the termination of their father's employment," but instead, <u>if not for the unlawful termination</u>, Plaintiff's children would have applied to Temple: "It is our understanding that Mr. Branch planned to utilize the tuition remission benefit for all of his children…" *Staller Report* at p. 5.

Therefore, the Expert Report's analysis is completely based on reliable information straight from the Plaintiff. Defendants simply argue that Plaintiff's children were not going to apply and were never going to get in because they think so. Merely because Plaintiff did not attend college,

---

[1] Notably, Defendants' own expert based their analysis upon their review of a Facebook page, and yet, admit on p. 8 that they have not been provided with documentation that two of Mr. Branch's children were going to attend college. That does not mean the children were not going to apply, it simply means Defendants' rebuttal expert does not have enough information.

6

as any reasonable person knows, that does not mean his children would not either. Defendants do not make out any legally or factually sufficient basis for preclusion of the tuition remission analysis, let alone Expert Staller's entire testimony. Again, "[a] judge will often think that an expert has good grounds to hold the opinion that he or she does <u>even though the judge thinks that the opinion is incorrect</u>." *Paoli*, 35 F.3d at 744 (3d Cir. 1994)(emphasis added).

### 2. *Expert Staller's Pension Analysis Is Based On Reliable Methods And Fact*

Second, Defendants argue that Plaintiff did not participate "nor was eligible for the Defined Contribution Plan described on Temple's website" and claim that Plaintiff was not eligible for any employer matching plan. In making this argument, Defendants' brief and the corresponding reliance is placed solely upon "<u>Per conversations with Temple employee- Senior Director of Benefits</u>." *See Rebuttal Report* at p. 7 n. 27.

Here, Defendants arguments are not only self-serving as they are based on "conversations with a [Defendant] Temple employee," but same are <u>factually false.</u> Plaintiff, in fact, <u>received employer contributions during his employment as evidenced by his paystubs submitted in discovery.</u> *See* Exhibit A. As evidenced, Plaintiff received contributions from his employer over the course of the years when working. Therefore, Defendants arguments are not only legally insufficient, but are rebutted by Plaintiff's paystubs within Defendants' possession.

### 3. *Expert Staller's Compensation Analysis Is Based On Reliable Methods And Fact*

Third, Defendants, as throughout their motion, do not argue that Expert Staller's analysis regarding future compensation is based on subjective belief or unsupported speculation, but instead, do not agree with his interpretation and reliance on an independent study from the U.S. Census Bureau. In fact, Defendants' solely argue that they believe that the <u>definition within the independent study</u> would not apply to Plaintiff because they say so and because Plaintiff found subsequent work. That's it. They do provide any alternatives, any additional facts or legal

7

argument. As before, Defendants' self-serving interpretations are subject to a jury determination and are not a sufficient basis for preclusion in the Third Circuit.

Notwithstanding, Expert Staller's report notes "we consider data on individuals who were displaced from their jobs…and subsequently found work had caught up to or exceed their previous reported earning by…a period of at most three years." *See Expert Staller's report* at p. 4. Such is precisely placing reliance on a scientific method (a U.S. Census Bureau report) and in no way does the report make the subjective conclusions required for preclusion. Any debate over the application or interpretation of the survey is appropriate for a jury upon hearing expert testimony at trial.

Finally, Defendants argue that because Plaintiff made a lateral employment move from another employer which he was working at while at Temple (from CBRE to Penn and which does not have any effect on damages) then the report must be precluded. This again is insufficient. As Plaintiff testified "Q. Okay. CBRE, how long did have that employment? A. Over two years, from 2018 to this year. Q. Two years? A. Well, from 2018 to this year. Q. Are you still there? A. I left to go to Penn, I just got a job at Penn…A. <u>Yeah, I left CBRE to go to Penn</u>." *Plaintiff's Deposition*, at p. 40:22-41:12. Here, record evidence shows that even if the report omits this specific, updated information as a result of Plaintiff's deposition (which occurred on February 12, 2021 and weeks after the report was produced on January 20, 2021), such information would have no impact because the lateral employment move does not have any effect on damages as Plaintiff worked at CBRE during his employment with Defendants. *See Staller Report* at p. 4 n. 22 ("Given Mr. Branch was concurrently working for CBRE at the time of his separation with Temple…we do not consider CBRE earnings as mitigation income.") Therefore, neither is the replacement job at Penn, and even this Honorable Court found that it was, the report would be then updated before trial to include any additional changes in damages. The report would not be wholesale excluded.

Accordingly, Defendants' motion must be denied in its entirety as Expert Staller's report and anticipated testimony is entirely based upon "methods and procedures of science." "Admissibility decisions focus <u>on the expert's methods and reasoning</u>; credibility decisions arise after admissibility has been determined." *Kannankeril*, 128 F.3d at 806 (3d Cir. 1997)(citing *In re Paoli R.R. Yard Pcb Litig.*, 35 F.3d 717, 743-746 (3d Cir. 1994)).

### III. <u>CONCLUSION</u>

Based on the foregoing in response to Defendants' Motion to Preclude Expert Testimony, Mr. Branch respectfully requests that this Honorable Court deny Defendants' Motion in its entirety.

Respectfully submitted,

**KARPF, KARPF & CERUTTI, P.C.**

By:   */s/ David N. Korsen*
     David N. Korsen, Esq.

Dated: June 7, 20201

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| STEPHEN BRANCH | : | CIVIL ACTION |
| Plaintiff, | : | No.: 20-2323 |
| v. | : | |
| TEMPLE UNIVERSITY., ET AL. | : | |
| Defendants. | : | |

## CERTIFICATE OF SERVICE

I certify on the date set forth below that I served Defendants with a copy of Plaintiff's Response to Defendants' Motion To Preclude Expert Testimony at the follow address via ECF:

Adam Brown, Esq.
Danielle Banks, Esq.
STRADLEY RONON STEVENS & YOUNG LLP
2005 Market Street, Suite 2600
Philadelphia, PA 19103-7098
(215) 564-8000
abrown@stradley.com
DBanks@stradley.com

*/s/ David N. Korsen*
David N. Korsen, Esq.

Date: June 7, 2021