**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 21-3099

_____

STEPHEN BRANCH,
                              Appellant

v.

TEMPLE UNIVERSITY; SEAN OUNAN; SHARON BOYLE

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 2-20-cv-02323)
District Judge:  Hon. Chad F. Kenney

_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
May 17, 2023

_____

Before:  CHAGARES, *Chief Judge*, GREENAWAY, JR., and PHIPPS, *Circuit Judges*.

(Opinion filed: June 14, 2023)

_____

OPINION[*]

_____

PHIPPS, *Circuit Judge*.

On January 29, 2020, Temple University fired Stephen Branch, an African

American male, who had worked there as a roving facilities engineer for sixteen years.

Temple's stated reason for terminating Branch's employment was that he skipped work

for three consecutive days in January 2020 and lied about his absence.  Challenging that

_____
[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not
constitute binding precedent.

stated ground as pretextual, Branch initiated this suit against Temple, his direct supervisor, and a human resources manager for race discrimination and retaliation under federal and state civil rights laws, *see* 42 U.S.C. §§ 1981, 2000e-2(a); 43 Pa. Stat. § 955(a), and for interference and retaliation under the Family and Medical Leave Act, *see* 29 U.S.C. § 2612.  In exercising jurisdiction over those claims, *see* 28 U.S.C. §§ 1331, 1343, 1367, the District Court permitted discovery, denied Temple's motion for summary judgment, *see Branch v. Temple Univ.*, 554 F. Supp. 3d 642, 665 (E.D. Pa. 2021), and held a jury trial.

Shortly before trial, Branch moved *in limine* to exclude after-acquired evidence, or alternatively, to bifurcate the trial into liability and damages phases.  Branch did not dispute that Temple could support its case with material it reviewed before terminating Branch, such as Temple's logbooks, swipe card records, and surveillance footage showing Branch leaving campus during his shift.  But through his motion, Branch argued that Temple could not rely on evidence acquired after it terminated him.  That evidence, obtained in discovery, included time records from a second employer showing that, at various times over the years, Branch simultaneously worked a second job during his Temple shift.  It also included incriminating text messages from Branch.

The District Court denied Branch's requests and permitted Temple's Director of Labor Relations to testify about the after-acquired evidence, subject to limiting instructions.  The jury returned a verdict for Temple.

Through a timely appeal, Branch invoked this Court's appellate jurisdiction.  *See* 28 U.S.C. §§ 1291, 2107(a).  He now disputes the District Court's rulings on the introduction of the after-acquired evidence and the testimony of Temple's Director of

Labor Relations.  For the reasons below, we will affirm the judgment of the District Court.

## I.  The Limited Relevance of After-Acquired Evidence in a Discrimination Case

As a general matter, a claim of race discrimination in employment rests on proof that race caused or motivated an employer to take an adverse employment action against an employee.  *See Connelly v. Lane Const. Corp.*, 809 F.3d 780, 787–88 (3d Cir. 2016) (recognizing but-for and mixed-motive causation standards under Title VII).[1]  Thus, such claims hinge on the employer's mindset at the time of the adverse employment action.  *See Price Waterhouse v. Hopkins*, 490 U.S. 228, 241 (1989) (plurality opinion) (explaining that Title VII claims focus on the employer's mindset "*at the moment*" of the employment decision); *see also McKennon v. Nashville Banner Publ'g Co.*, 513 U.S. 352, 360 (1995); *Geraci v. Moody-Tottrup, Int'l, Inc.*, 82 F.3d 578, 581 (3d Cir. 1996).

Sometimes, however, in litigating an employment discrimination claim, an employer discovers information that would support or independently justify its adverse employment action.  *See McKennon*, 513 U.S. at 359–60; *Mardell v. Harleysville Life Ins. Co.*, 65 F.3d 1072, 1073 n.1 (3d Cir. 1995).  But because that after-acquired evidence cannot retroactively affect the employer's basis for the decision, it is not material to the employer's adverse employment decision.  *See McKennon*, 513 U.S. at 360 ("The employer could not have been motivated by knowledge it did not have and it cannot now claim that the employee was fired for the nondiscriminatory reason."); *Mardell*, 65 F.3d at 1073 n.1 (similar).  The after-acquired evidence, especially when it supplies a ground

---

[1] *See also Jones v. Sch. Dist. of Phila.*, 198 F.3d 403, 410 (3d Cir. 1999) (applying the same standard to discrimination claims under the Pennsylvania Human Relations Act); *cf. Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*, 140 S. Ct. 1009, 1019 (2020) (clarifying that the § 1981 race discrimination standard is but-for causation).

for discipline wholly unrelated to the employer's contemporaneous justification, cannot be used to negate liability. *See Delli Santi v. CNA Ins. Cos.*, 88 F.3d 192, 205 (3d Cir. 1996) (recognizing that after-acquired evidence is inadmissible where it presents a "different and legitimate reason for discharge").[2]

Still, the overall relevance of a piece of evidence depends on the purpose for which it is offered. *See United States v. Morley*, 199 F.3d 129, 133 (3d Cir. 1999) ("Here, as in so many cases, inquiries of relevance and proper purpose are intimately intertwined."); *see also United States v. Hamann*, 33 F.4th 759, 769 (5th Cir. 2022) ("Evidence can be relevant for multiple purposes."); *United States v. Davis*, 596 F.3d 852, 860 (D.C. Cir. 2010) (same); *Lopez v. Tyson Foods, Inc.*, 690 F.3d 869, 882–83 (8th Cir. 2012) (same). And although after-acquired evidence is not relevant to an employer's state of mind at the time of the adverse employment action, it may be relevant for other purposes. It may be material to damages because it may justify the denial of reinstatement and front pay as well as back pay to start from the date of the employer's discovery of the new evidence. *See McKennon*, 513 U.S. at 361–62 (explaining how after-acquired evidence may limit damages); *Anthony v. Trax Int'l Corp.*, 955 F.3d 1123, 1133 (9th Cir. 2020) ("[A]t the very least, *McKennon* permits the use of after-acquired evidence to limit damages."). Similarly, after-acquired evidence may be used to rebut or impeach contrary testimony, *see Vichare v. AMBAC Inc.*, 106 F.3d 457, 467–68 (2d Cir. 1996), or to corroborate facts associated with the employer's contemporaneously-asserted

---

[2] *See also McKennon*, 513 U.S. at 355, 360 (precluding employer from justifying termination on new, unrelated ground: misuse of confidential documents); *Wallace v. Dunn Const. Co.*, 62 F.3d 374, 379 (11th Cir. 1995) (en banc) (similar: résumé fraud); *Nieves-Villanueva v. Soto-Rivera*, 133 F.3d 92, 101 (1st Cir. 1997) (similar: hiring irregularities); *Cullen v. Olin Corp.*, 195 F.3d 317, 324 (7th Cir. 1999) (similar: job performance); *Rivera v. NIBCO, Inc.*, 364 F.3d 1057, 1071 (9th Cir. 2004) (similar: immigration status).

justification for the adverse employment action, *see Gant ex rel. Gant v. Wallingford Bd. of Educ.*, 195 F.3d 134, 147 n.17 (2d Cir. 1999).

Several rules pertain generally to evidence that is relevant for one purpose but not another, and those apply with equal force to after-acquired evidence. The Federal Rules of Evidence enable a judge, upon a party's objection, to issue a limiting instruction to "restrict the evidence to its proper scope," Fed. R. Evid. 105, or to exclude the evidence "if its probative value is substantially outweighed by a danger of . . . unfair prejudice," *id.* 403. Similarly, when the purpose of evidence relates to separate issues, the Federal Rules of Civil Procedure allow district judges, at their discretion, to hold separate trials on those issues "to avoid prejudice." Fed. R. Civ. P. 42(b).

## II. The Challenged Rulings Related to the Alleged Prejudicial Effects of After-Acquired Evidence

The District Court permitted Temple's use of after-acquired evidence at trial subject to several limiting instructions to the jury. On appeal, Branch disputes the adequacy of these instructions and contends that a more protective measure was required: either bifurcation or exclusion of the after-acquired evidence.

### A. The Denial of Branch's Motion to Bifurcate

Through his pretrial motion, which Temple opposed, Branch requested bifurcation of the trial into liability and damages phases. He did so in effort to prevent the after-acquired evidence from influencing the jury's decision on whether Temple discriminated against him.

A ruling on a request to bifurcate trial receives abuse-of-discretion review, *see Thabault v. Chait*, 541 F.3d 512, 529 (3d Cir. 2008), and here the District Court was well within its discretion to deny Branch's request, *see Vichare*, 106 F.3d at 467. Separating trials "is not to be the usual course," Arthur R. Miller, 9A *Federal Practice & Procedure*

§ 2388 (3d ed. 2023), and even if the trial were bifurcated, after-acquired evidence could be permissibly used at the liability phase to rebut or impeach any contrary testimony by Branch, *see United States v. Verdugo*, 617 F.3d 565, 578 (1st Cir. 2010) ("A party ordinarily may introduce extrinsic evidence to impeach testimony by contradiction if the extrinsic evidence concerns a subject that is not collateral to the issues being tried."). *See generally* Daniel R. Coquillette et al., 8 *Moore's Federal Practice* § 42.20[4][a] (2023); Fed. R. Civ. P. 42(b), advisory committee's note to 1966 amendment. And in this case, the distinctions between the permissible and impermissible purposes of after-acquired evidence are not so bewildering or unfairly prejudicial as to exceed the prophylactic power of a limiting instruction. *See Mardell*, 65 F.3d at 1073 n.2 ("While bifurcation may sometimes be advisable as a vehicle to insure that after-acquired evidence not be improperly used during the liability phase, in other cases cautionary instructions or stipulations may render it unnecessary.").

### B. The Denial of Branch's Motion to Exclude and the Overruling of his Trial Objections

Branch next argues that the District Court's instructions in this case were deficient and did not overcome the prejudicial effects of the after-acquired evidence.

### 1. *Temple's Use of After-Acquired Evidence to Impeach Branch*

Branch's trial testimony prompted Temple's initial use of the after-acquired evidence. After Branch stated that his second job did not interfere with his work, Temple cross-examined him with time records in direct rebuttal: they showed that his second job took time away from his shift at Temple. Similarly, when Branch testified that he did not sleep on the job, Temple offered text messages to contradict him. As this information came before the jury, the District Court marked a clear line: that evidence "goes to impeachment" but "not the reason for firing." Limiting Instruction (SA46:17–19); *see*

*also* Limiting Instruction (A239:15–17) ("[I]t doesn't go to say, oh, there's evidence that he left campus back then so they had a right to fire him there.").  And later, in charging the jury before its deliberations, the District Court was similarly emphatic: "You are not to consider any such evidence as to employer's intent or that such evidence was relied upon in any way by the employer as a basis for termination and/or discipline."  Jury Instruction (SA126:23, 129:3–6).  Nothing about the District Court's ruling was an abuse of discretion.  The contents of its instructions were not deficient.  Nor did the danger of unfair prejudice substantially outweigh the probative value of the after-acquired evidence in cross-examining Branch.  *See* Fed R. Evid. 403.

## 2.  *Temple's Introduction of After-Acquired Evidence*

Beyond cross-examining Branch, Temple also introduced after-acquired evidence as part of its case.  It did so over Branch's objections during the testimony of Monica Washington, Temple's Director of Labor Relations.  In reviewing time records – both from Temple and from Branch's other employer – as well as Branch's text messages, Washington opined that Temple would have fired Branch earlier, had it learned of that information beforehand.  Although the use of the evidence to limit a potential damages award was permissible, *see McKennon*, 513 U.S. at 362, Branch contends that the evidence was unfairly prejudicial, *see* Fed. R. Evid. 403.  But to limit damages, Temple had to "establish that the wrongdoing was of such severity that the employee in fact would have been terminated."  *McKennon*, 513 U.S. at 362–63.  Washington's testimony sought to meet that standard.  And the limiting instructions repeated by the District Court during Washington's testimony struck the right balance, such that the introduction of the after-acquired evidence was not unfairly prejudicial.  *See United States v. Finley*, 726 F.3d 483, 494 (3d Cir. 2013) (emphasizing that Rule 403 applies to evidence that is

"*unfairly* prejudicial").[3]

Branch also argues that the after-acquired evidence constituted impermissible other-acts evidence. *See* Fed. R. Evid. 404(b). But Temple was not relying on the after-acquired evidence to prove character and conformity therewith. The purpose of that evidence was not so elaborate: the after-acquired time records and text messages were used to cut off damages based on Branch's absenteeism, as reflected by those documents. That purpose is far removed from using the documents to prove character and then conformity therewith. Thus, the District Court did not abuse its discretion in allowing the introduction of after-acquired evidence as part of Temple's case at trial.

### III. The Challenges to the Testimony of Temple's Director of Labor Relations

Temple's only witness to testify about the after-acquired evidence was Washington, Temple's Director of Labor Relations. Branch objected to her testimony on two primary grounds – failure to identify her on initial disclosures and speculation – either of which would prevent the introduction of the after-acquired evidence. Neither of those succeeds.

### A. The Omission of Washington from Temple's Initial Disclosures

To streamline the exchange of 'core' discovery, the Federal Rules of Civil Procedure require the early exchange of initial disclosures between the parties. *See* Fed. R. Civ. P. 26(a); *see also* Richard L. Marcus, 8A *Federal Practice & Procedure* § 2053 (3d ed. 2023) (discussing the history of initial disclosures in federal civil cases). Among

---

[3] As part of his unfair-prejudice argument, Branch also asserts that the time records are unauthenticated hearsay. This contention is not adequately developed, especially here, where the time records seem to fit readily within the business-records exception to hearsay, *see* Fed. R. Evid. 803(6); *Starceski v. Westinghouse Elec. Corp.*, 54 F.3d 1089, 1098 n.9 (3d Cir. 1995), and contain an accompanying Rule 902(11) certification, *see* Fed. R. Evid. 902(11) (setting the certification process for domestic records of regularly conducted business activity).

those required disclosures is the identification of "each individual likely to have discoverable information—along with the subjects of that information—that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment." Fed. R. Civ. P. 26(a)(1)(A)(i); *see also* Richard L. Marcus, 8 *Federal Practice & Procedure* § 2013 (3d ed. 2023).

In this case, Temple did not identify Washington in its initial disclosures, and Branch contends that she should have been barred from testifying on that ground. But this argument is unrealistic: a party cannot be expected to identify in its *initial* disclosures a witness whose knowledge about a defense came from evidence *later* acquired in discovery. And here, when Temple submitted its initial disclosures to Branch, it had not received the time records from Branch's other employer or Branch's text messages.

Most charitably, Branch's argument seems to fault Temple for not supplementing its initial disclosures once it received the after-acquired evidence. But supplementation based on newly discovered information is required only if the "information has not otherwise been made known to the other parties during the discovery process or in writing." Fed. R. Civ. P. 26(e)(1)(A). Yet, here, Branch knew of Washington – he produced documents in discovery mentioning her. He also knew about the after-acquired evidence she discussed at trial: it concerned his whereabouts and related to his text messages. And once discovery ended, Temple identified Washington on its witness list 25 days before trial. Thus, while it may have been best practices for Temple to have supplemented its initial disclosures to mention Washington, the District Court did not abuse its discretion in permitting her to testify without such supplementation here, where Branch knew all along of Washington and the information that Temple learned in discovery. *See Quinn v. Consol. Freightways Corp. of Del.*, 283 F.3d 572, 577 (3d Cir.

2002) (affirming a ruling permitting a witness to testify about subjects not mentioned in interrogatory responses as the defendant knew of this testimony in advance); *cf. ZF Meritor, LLC v. Eaton Corp.*, 696 F.3d 254, 298 (3d Cir. 2012) (holding that District Court abused its discretion in striking untimely alternative damages calculation under Fed. R. Civ. P. 26).[4]

### B. The Speculation Objections to Washington's Testimony

As his final point, Branch challenges Washington's testimony about after-acquired evidence as speculative. In particular, he argues that Washington should not have been permitted to interpret the time records from his second employer. But any concerns that Washington lacked the personal knowledge of the second employer's time records were put to rest by the fact that Temple and that other employer used the same timekeeping system provided by the same vendor. *See United States v. Franco*, 874 F.2d 1136, 1139 (7th Cir. 1989) (explaining that a 'qualified witness' can be anyone "who understands the system used"); *cf. United States v. Console*, 13 F.3d 641, 657 (3d Cir. 1993) (holding that employee "familiar with the office record-keeping system" could testify about office records). And that suffices for foundation for purposes of Washington's testimony, which compared the time records from the two employers and identified overlaps.[5]

\* \* \*

---

[4] This same analysis applies to Branch's related contention that Temple did not identify Washington in response to his first interrogatory request, which was partially redundant of the initial disclosures in that it sought, among other things, the identities of persons with information about claims or defenses.

[5] Unrelated to after-acquired evidence, Branch – in a sentence at the end of his brief – disputes as speculative a line of questioning in which Temple asked whether Washington had any suspicions, from Temple's own time records, that Branch was not on the job when he said he was. In overruling Branch's objection, the District Court again was well within its discretion: Washington weighed in on the decision to fire Branch, and thus her suspicions about Branch's absenteeism related to Temple's motivation for terminating his employment.

For the foregoing reasons, the judgment of the District Court will be affirmed.